### CASEIN CO. of AMERICA v. A. M. COLLINS MFG. CO.

(Circuit Court of Appeals, Third Circuit. November 29, 1909.)

### No. 25.

1. PATENTS (§ 328*)—PRIOR PUBLIC USE—ENAMELING COMPOUND FOR PAPER.
    The Hall patent, No. 626,537, for an enameling compound for sizing paper, and method of producing the same, is void for prior public use of the enamel for more than two years before the application.

    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*

    Priority and continuance of public use of invention as affecting patentability, see note to Eastman v. City of New York, 69 C. C. A. 646.]

2. PATENTS (§ 328*)—REISSUE—ENAMELING COMPOUND FOR PAPER.
    The Hall reissue patent, No. 11,811 (original No. 609,200), for a waterproofing compound for sizing paper, is void, as broadening the patent to cover an original ingredient of the compound which was disclaimed in the original.

    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Suit in equity by the Casein Company of America against the A. M. Collins Manufacturing Company. Decree for defendant (172 Fed. 237), and complainant appeals. Affirmed.

Edmund Wetmore, for appellant.

Horace Pettit, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the appellant, the Casein Company, charged the A. M. Collins Manufacturing Company, the appellee, with infringement of two patents. One of them, No. 626,537, known herein as the "free acid patent," issued June 6, 1899, to William A. Hall, was for an enameling compound and a method of producing the same. The other, reissue No. 11,811, of No.

609,200, known herein as the "formaldehyde patent," issued originally August 16, 1898, and reissued March 6, 1900, to said William A. Hall, for a water-proofing compound. On final hearing the court below, in an opinion reported at 172 Fed. 237, found the patents void and dismissed the bill. Thereupon the Casein Company appealed to this court.

These patents concern the use of casein or the common curd of milk. The use of modern separators in creameries has resulted in more thorough extraction, and a corresponding impoverishment of curd, than under old practices. Applied science, however, has developed the possibility of wide use of curd in other spheres, one of which is involved in the present case, namely, as an insoluble coating or sizing of paper.

Turning, first, to the free acid patent, we find it is for—

"the production of a coating or enamel for finishing and surfacing paper and which is of such a character that while it gives a smooth and finished surface to the paper treated with it, and one which is well adapted to receive the printing ink, it produces a surface which will resist the attacks of moisture and prevent the disintegration of the paper and the disfiguration of the matter printed thereon."

The specification shows that clay was the basis of the coating and casein the adhesive agent in its application. Thus the patentee states:

"The composition which I have produced belongs to that class of clay coatings in which a mineral base—such as clay, blanc fixe, or a similar ingredient—is used to give body to the composition. The adhesive ingredient of the enamel, which is necessary to fix it to the paper or article coated, is casein or milk albumen; the casein being precipitated from the milk by the use of any suitable acid which will throw down the curd, preferably $H_2SO_4$ or HCl."

Preferably some acid is left in the curd. Thus:

"I preferably leave a small portion of the acid in the curd or casein, as I find that the effect of this acid is to render the curd insoluble after the composition has been applied and has become seasoned, and, furthermore, it leaves the curd in a wholesome and clean condition, without imparting to it the 'cheesy' odor resulting from rennet curdling or natural souring, which, it is apparent, would be objectionable in a coating or enamel of this kind."

Any suitable acid may be used to precipitate the curd; any suitable alkali to cut the casein and reduce to solution. Thus:

"Any suitable acid may be used to precipitate the curd from the milk, such as sulphuric, acetic, or muriatic acid. To cut the casein and reduce it to a solution, a small amount of alkali, about 3 per cent. of the composition, is used, and any suitable alkali, such as borax, ammonia, or carbonate of soda, will be suitable."

In the mixture the mineral clay forms about 80 per cent. and the casein about 17 per cent. The process is thus described:

"In making the composition I preferably take the dry curd, which contains a small amount of free acid, as stated hereinbefore, the curd after precipitation having been slightly washed, so as to remove only a portion of the acid used in precipitating it, and said dry curd is either mixed with an alkali and the mixture then dissolved in water, or an alkaline solution may be made in which the curd is then dissolved. To the casein solution thus obtained the clay or mineral base, worked up smoothly in water, is added until the desired consistency is obtained. If preferred, however, the dry curd, containing the free acid, the alkali, and the clay, may all be worked up in water at the same time. The coating thus produced is, as stated above, water-resisting and practically insoluble, and is well adapted to preserve the paper coated with

it from the attacks of moisture, this being due to the fact that the effect of the free acid, which forms an ingredient of the composition, is to render the casein practically insoluble in water."

Upon this composition and process three claims were granted, and the broad monopoly of the use of curd here involved is seen when we note that curd or casein containing free acid is the only element in the claim, viz.:

"An insoluble coating or enamel for paper composed of casein containing free acid, in substantially the proportions specified."

The court below found that, for more than two years prior to the application of the patent, Hall, the patentee, had had on public sale considerable amounts of the composition covered by the patent and produced by its process. An examination of the proofs satisfies us of the correctness of this finding. Without referring in detail to the testimony, it is clear to us that more than two years before Hall had produced and thereafter sold acid-precipitated curd; that the process followed under his instructions produced dry curds containing acid; that the dryness of the curd and the presence of the acid required the use of about 15 per cent. of borax as a solvent; that these elements, proportions of ingredients, and the use of his process, etc., are all clearly shown to have been in public use more than two years prior to this application. Indeed, this two years prior practice and its results were embodied by Hall in his patent application filed over two years later, wherein he said:

"It is well known that pure casein, or casein from which the acid has been completely removed by washing, does not dry readily, but remains in a soft and friable condition, and possesses but little toughness or tenacity. It is readily dissolved in a very weak alkaline solution, and a coating formed from this solution is weak, and easily attacked and destroyed by moisture. In the course of my experiments I have discovered that, when a percentage of the mineral acid used in precipitating the curd is left in the casein, a greater amount of alkali is required to reduce the acid curd, which is in a hard condition, to a solution, than when no acid is present and the casein has been thoroughly washed, as stated above. For example, if the acid be removed by washing, about 7 per cent. of borax will be sufficient to dissolve the comparatively soft and friable curd; but, when about 1 per cent. of acid is left in the curd, from 10 to 15 per cent. of borax is necessary to properly reduce this hard acid to curd."

We are therefore of opinion the free acid patent was void.

We next turn to the formaldehyde reissue patent. This was a further improvement on the compound of the free acid patent, and in a general way consisted of adding formaldehyde thereto. The object of adding the formaldehyde, as stated by the patentee, is:

"The effect of the formaldehyde used in this casein composition is to render the same, when fully dried out, insoluble in or insensible to the action of water, either at normal or at high temperatures."

An examination of the file wrapper shows that, when Hall originally applied for his patent, he made a broad claim for a composition of casein and formaldehyde. This was rejected on Zimmerman's English patent, No. 23,585. He then narrowed his claims by introducing the element of a mineral base; but the office held that the use of a filler was a mere mechanical addition to the Zimmerman patent. We may

add here that, had the prior public use above referred to of clay as a filler with casein containing free acid, been known to the office in addition to Zimmerman's use of casein and formaldehyde, there would have been added support to its action. The patentee having failed to get claims by the addition of clay as a base or filler, he then introduced the contention that the use of clay involved two functions in the combination: (1) That it caused porosity to the compound, so as to absorb printing colors and ink; and (2) that it acted as a precipitant retardant. An examination of the proofs shows the very decided burden of proof to be that clay does not act as a retardant. The evidence of Dr. Chandler, complainant's expert, is in effect noncommittal; while that of Dr. Sadtler, respondent's expert, and his reasons in support of it, are convincing that it does not. Indeed, it is clear to us that, when Hall applied for his patent, he neither conceived nor disclosed any such retardant action of clay, or, indeed, made clay an element in any claim, and that the subsequent introduction thereof into the patent was suggested as a mere theory to overcome valid objections to the grant of the patent. We are satisfied that this theory was neither based on prior experience nor proved by subsequent development. We therefore think the position of the office in rejecting the application was well taken.

After Hall's substituted application was rejected, he amended by adding a disclaimer in reference to the use of soda alkali, which was embraced in the specification of his patent as originally granted as follows:

"I find that a soda alkali will not serve as an ingredient of the composition, for the reason that, if a soda alkali be used as a solvent for the casein, the introduction of the formaldehyde will cause immediate precipitation, for the reason that $CH_2O$ has an acid reaction and will not work with a soda alkali. In the use of the other class of alkalies, however, such as ammonia, etc., as a solvent, the objectionable precipitation incident to the use of soda alkali is avoided. In fact, a sufficient quantity of $CH_2O$ can be added to throw the casein solution on an acid, and said solution will still remain perfectly smooth and limpid."

This disclaimer of a soda alkali was probably made in view of the use of certain alkalies in Zimmerman's patent; but, for whatever purposes it was made, it became part of his patent, and to that extent narrowed the scope of his claims. Now it seems he subsequently found his process could be used in connection with soda alkali. It was in fact so used by the respondent, and in view of the disclaimer they had a right to use it. Thereupon Hall sought by a reissue to eliminate such disclaimer and correspondingly broaden the monopoly of his patent. It is clear to us that, the presence of this disclaimer having been made for the purpose of avoiding references, and such disclaimer having been acted upon by the public, a reissue whereby the effect of this disclaimer was avoided and his patent broadened was void.

The decree of the court below will therefore be affirmed.