## SEABURY v. AM ENDE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 285. Argued March 14, 15. 1894. — Decided April 2, 1894.

The invention patented to Charles G. Am Ende by letters patent No. 181,024, dated August 15, 1876, which "had for its object to combine the

various advantages of cotton-fibre with those possessed by boracic acid and glycerine for preserving animal and vegetable matter from decay," was useful, novel, and patentable, and was described in the application and specification in sufficiently full, clear, and exact terms to enable an intelligent chemist reading that description of it, to construct and use it.

In estimating the profits derived from the unlawful manufacture and sale of a patented invention, the infringer should not be allowed interest on the capital invested in his plant, unless it appears that the plant was used solely for the manufacture or sale of the patented article, or the evidence be such as to enable the master to satisfactorily apportion the interest between the several kinds of business.

If the infringer be a corporation, salaries of its officers should not be allowed in estimating such profits, where it does not appear that they have been actually paid.

CHARLES G. AM ENDE, a citizen of the State of New Jersey, filed a bill of complaint in the Circuit Court of the United States for the Southern District of New York, against Seabury & Johnson, a corporation of the State of New York, in which he alleged that he was the patentee and owner of letters patent of the United States, dated August 15, 1876, and numbered 181,024, for an improvement in borated cotton, and that the defendant corporation, in disregard of his rights, was engaged in making and vending borated cotton made in accordance with the method described in said letters patent. The defendant corporation, by its answer, raised the issues of novelty and patentability, which were determined in favor of the complainant, and the case resulted in a decree, restraining the defendant from further infringement, and awarding the complainant the sum of $2349.15 with costs; from which decree this appeal was taken.

*Mr. Edwin H. Brown* and *Mr. Norman T. M. Melliss,* for appellant, as to the points considered in the opinion of the court, said :

The specification shows nothing new in the manner of producing a solution of boracic acid, and gives no information as to the strength of solution which shall be used. It states nothing definite about the quantity of glycerine, but contains only the very vague and indefinite information that a *small*

proportion is to be used. The manufacturer therefore is left to follow his own preferences with regard to the relative proportions of the boracic acid and glycerine which he shall employ, or to experiment in order to ascertain what may be required.

The specification being, therefore, a mere suggestion and not a specification conforming to legal requirements of the use of cotton, boracic acid and glycerine for preserving animal tissue must, we submit, be held insufficient to constitute a consideration for the contract involved in the granting of a patent. On this general ground, aside from specific provisions of the statutes concerning the necessary characteristics of a specification, is not the patent invalid? *Tyler* v. *Boston*, 7 Wall. 327.

Appellee's patent admits that there was nothing novel in the solution of boracic acid, by omitting information about it except that it was to be prepared in the usual manner. It also admits that boracic acid was the substance relied upon as a preservative agent.

Exhibit A, extract from Druggists' Circular and Chemical Gazette, June, 1875, (p. 64,) states that Dr. J. Edmunds, in a complicated case of amputation of the thigh, "had employed dressing of lint steeped in a hot saturated solution of boracic acid with most satisfactory results in preventing putrefactive discharge. The bandage could remain for thirty-six or forty-eight hours without the slightest putrefactive odor."

There is absolutely nothing in the record or in appellee's patent to show that a dressing consisting simply of cotton and boracic acid solution would, so long as the water of the solution remained unevaporated, be less efficacious than appellee's dressing. In other words, there is nothing in this case to show, nor has there been any contention, that a dressing consisting of cotton and a boracic acid solution would possess increased antiseptic properties, because of the addition of glycerine.

Under the doctrine in *Hollister* v. *Benedict Mfg. Co.*, 113 U. S. 59, the addition of glycerine did not amount to a patentable invention. Its hygroscopic property was the only one

which rendered its use desirable, and that was well known. See also *Union Edge Setter Co.* v. *Keith*, 139 U. S. 530; *Adams* v. *Bellaire Stamping Co.*, 141 U. S. 539, 542; *Leggett* v. *Standard Oil Co.*, 149 U. S. 287.

The appellant is entitled, in case the patent is sustained, to be allowed, in computing the profits on sales, the interest on the plant and capital invested.

The master threw out these items because of his reading of the rule laid down in *Rubber Co.* v. *Goodyear*, 9 Wall. 788, 804. But it is submitted that interest on capital should be allowed, and also interest on machinery, under the rules laid down in the *Troy Iron and Nail Factory* v. *Corning*, 6 Blatchford, 328, 354, and in the *Steam Stone Cutter Co.* v. *Windsor Mfg. Co.*, 17 Blatchford, 24, 28; for it must be admitted that the reasoning of these Circuit Court decisions is more convincing on this point than that of the Supreme Court case, and that the latter decision seems hardly consistent with itself, for it is difficult and perhaps impossible to see why interest should be allowed on borrowed capital and not on capital owned by the infringer. Indeed, the principle of the case of *Rubber Co.* v. *Goodyear* on this point seems to have been overruled by the Supreme Court in the case of the *Manufacturing Co.* v. *Cowing*, 105 U. S. 253, 257. In that case the court criticised and modified the master's report because it did not allow for use of tools, machinery, power and other facilities employed in the manufacture of the infringing article. See also Walker on Patents, § 718, Sub.-Div. 4.

The tools, etc., were the tangible things in which the defendant's capital was invested, and to allow for their use was really to allow interest or its equivalent on that capital.

*Mr. Arthur v. Briesen* for appellee.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The specification and claim of the patentee were in the following terms :

" This invention has for its objects to combine the various

advantages of cotton-fibre with those possessed by boracic acid and glycerine for preserving animal and vegetable matter from decay.

"Heretofore boracic acid has been used as a preservative agent in a fluid state, and also as a powder. In use, the matter to be preserved had to be immersed in the solution of boracic acid, or completely covered with the powder. In either case, a very large quantity of boracic acid was used.

"My present invention, which consists in saturating cotton-fibre with boracic acid and glycerine in a manner hereinafter described, enables me to apply a very small proportion of boracic acid and glycerine to the cotton-fibre with fully as good an effect as though the matter to be preserved were entirely embedded in large quantities of the solution or powder. It enables me, at the same time, to utilize the germ-filtering properties of the cotton, and its elasticity as a superior material for packing or covering delicate tissue.

"I produce my improved borated cotton as follows : I first prepare a solution of boracic acid in the usual manner, and add thereto a small proportion of glycerine. For the preservation of tender substances, such as veal, I may also add from ten to forty per cent of soda or potash, never sufficient, however, to reach neutrality. The cotton, either in bulk or wadding, is next immersed in the solution until well impregnated therewith, and then pressed, to discharge all surplus solution, or so much thereof as may be required. The cotton is then dried and ready for use.

"When applied to the material to be preserved, either as a covering or as a wrapping or packing, the cotton will constitute a filter for keeping germs of putrefaction from passing through, and the boracic acid absorbed by the cotton will, at the same time, preserve the surfaces from decay, and counteract all injurious influences of germs, or other elements of destruction, already in contact with such surfaces.

"The glycerine is added to increase the preserving power of the borated cotton. It renders the cotton slightly hygroscopic, thus aiding in the diffusion of the acid and in the preservative effect of the prepared cotton.

" I have found that the impregnated fibre shows, even under a good microscope, no difference from a fibre not impregnated with boracic acid, and that, therefore, although a very thin film of acid may adhere to the exterior surface of the fibre, the main proportion of the acid is absorbed by and diffused within the fibres.   In consequence, the acid can, in use, be but gradually released from the fiber, and will thus produce a constant and lasting effect.

" I claim—

" The borated cotton, being cotton-fibre which is saturated with boracic acid and glycerine, substantially as herein shown and described."

The first ground of defence relied on is that the patentee has failed to describe his invention in such full, clear, and exact terms as to enable persons reading the description of the invention to construct and use it ; and it is contended that the strength of the boracic acid solution is not prescribed, nor the precise proportion of glycerine.  In, considering this objection it must be remembered that the description is addressed to persons skilled in the art to which it relates.   The solution of boracic acid is referred to, not as anything new, but as an article well known to druggists and physicians, and when the patentee says that he " prepares a solution of boracic acid in the usual manner," he means as it has formerly and customarily been prepared.   When he directs that a small proportion of glycerine shall be added, it is obvious that the quantity of the glycerine is to vary with the amount of cotton and boracic acid used, but that the merits of the invention will not depend on whether, in a given case, a little more or less glycerine is used.   Such general directions are common in the arts, as appears in some of the very publications introduced by the defendant to show anticipation.   Thus in the *Druggists' Circular and Chemical Gazette* it is stated that Dr. Edmunds had used " a solution of boracic acid ; " and in the *Journal de Pharmacie* it is said that, in making his dressing, Professor Gubler saturated his wadding with " a certain quantity of glycerine," and his formula is thus given : " It is only necessary to pour a small quantity of glycerine over the square sheet," etc.

We, therefore, agree with the court below in thinking that "an intelligent chemist, setting out properly to combine the enumerated ingredients into which the cotton is to be immersed, and with which it is to be impregnated, could hardly go astray." It is also to be observed that neither the defendant, in making the infringing article, nor the several witnesses of eminence in the medical profession, who testified to the practical value of the patented dressing, seem to have had any difficulty in understanding and applying the description contained in the patent.

In *Loom Co.* v. *Higgins,* 105 U. S. 580, where the sufficiency of a description was in question, it was held that a specification in letters patent is sufficiently clear and descriptive when expressed in terms intelligible to a person skilled in the art to which it relates.

The next contention is, that as the plaintiffs' patented dressing was composed of materials whose specific virtues and modes of operation were well known, there was no invention shown in combining them in the manner described. It is, indeed, true that the patentee did not claim to have been the first to suggest the use of cotton fibre as a means of excluding germs from wounds or from the article to be protected. Nor did he claim to have first discovered the antiseptic qualities of boracic acid or the hygroscopic property of glycerine. But the patentee was the first to perceive that by combining these articles, in the manner he pointed out, there would be formed a convenient and permanent dressing with the desirable qualities of the several constituents. The complainant's evidence satisfactorily shows that, in such a dressing, the cotton acts as a screen to exclude germs and as a vehicle to hold the other ingredients; that the boracic acid possesses marked antiseptic qualities, but is liable, if used alone, to dry on the cotton and to form crystals, which impair the antiseptic qualities of the acid, and which mechanically scratch or irritate the sensitive surface of a wound; and that the glycerine, owing to its property of absorbing moisture from the atmosphere, keeps the boracic acid from hardening or crystallizing, and besides adds somewhat to the healing and preservative power of the dressing.

The merits of the complainant's invention received immediate and widespread recognition, and the article came into use, not only to protect animal substances for alimentary purposes, but, and chiefly, to protect wounds from infection and suppuration. It was introduced into hospitals and into the private practice of physicians, and, in fact, has become a staple article for medicinal purposes.

But it is further contended that there was no novelty in complainant's invention, because it had been anticipated by others. To sustain this contention the defendant put in evidence an article published in the American Journal of Pharmacy for November, 1871, at page 516, where it is stated that Professor Gubler, at a recent meeting of the Academy of Medicine, had exhibited some specimens of wadding prepared by saturating it with a certain quantity of glycerine, which he had found to render it permeable to all medicinal liquids, without causing it to lose any of its suppleness and lightness. Also, an article in the same journal, for March, 1867, at page 149, wherein Dr. Adolphus stated that, "applied to suppurating surfaces which are painful and produce an ichorous pus, glycerine dressings change the abnormal condition by arresting the degenerating process, through its antiseptic and astringent properties." The defendant likewise put in evidence a copy of The Druggists' Circular and Chemical Gazette, for June, 1875, wherein there is an account of treatment by Dr. Edmunds, in the case of an amputated thigh, by a dressing of lint steeped in a hot solution of boracic acid, with most satisfactory results in preventing putrefactive discharge.

Undoubtedly this evidence shows that the specific qualities of glycerine and of boracic acid were known, and that those articles had been successfully used in the instances narrated. But we agree with the court below in thinking that "this evidence does not disclose that any one prior to Am Ende accomplished what he has described and claimed; that the fact that others had done something quite similar, and had used separately or in different combinations, the ingredients of his claim, should not affect his patent. All that is described in the prior publications the defendant may use with perfect

immunity. They may use 'lint steeped in a hot saturated solution of boracic acid,' or 'wadding saturated with a certain quantity of glycerine,' or boracic acid dissolved in glycerine; but they should not be permitted to use cotton combined with a solution of boracic acid and glycerine in the manner described in the specification, for that belongs to Am Ende."

Errors are complained of in the action of the court below in overruling defendant's exceptions to the master's report. So far as those exceptions are based on the computations and findings of the master, under the evidence before him, as to the profits made by the defendant, we see no reason to differ with the court below in overruling them. The claim that the appellants should be allowed, as part of the cost of the borated cotton during the period covered by the accounting, interest on plant, and capital invested, calls for more particular notice.

A similar claim was disallowed in the case of *Rubber Co.* v. *Goodyear*, 9 Wall. 804, but it is claimed that in *Manufacturing Co.* v. *Cowing*, 105 U. S. 257, such an item was allowed. In the latter case, which this court styled an " exceptional one," it was said that, in charging the defendant with profits, he should be allowed for " the use of tools, machinery, power, and other facilities employed in the manufacture." It may be, as was observed by the court below in the present case, that it did not appear, in *Manufacturing Co.* v. *Cowing*, but that the use of the tools, machinery, and power was a hired use. At any rate, in that case, the infringement consisted in making and selling a pump, which was the only one that could successfully compete with that controlled by the patent, and the machinery was used for no other purpose. In the present case, the defendant's plant and real estate were used for several other and wholly different kinds of manufacture than the patented article, and the evidence offered to distinguish between the profits derived from the use of the plant and real estate for making the borated cotton and those attributable to the other sources of profit, was not sufficient to enable the master to make a satisfactory apportionment or allowance for interest on the investment.

We do not wish to be understood as holding that in no case

where the plaintiff's damages' are measured by the defendant's profits, ought there to be an allowance, in the latter's favor, of interest on the money invested in the plant. Nor do we say that such an allowance may not be properly made, even where the use of the plant is not wholly restricted to making the infringing article. But the evidence, in such a case, should enable the master to satisfactorily apportion the interest between the several kinds of business.

The appellant further complains of the action of the master in disallowing the sum of $15,000 per annum for salary of the president of the defendant company. The defendant introduced evidence tending to show what would be reasonable compensation for such services as were performed by the president, but did not show what sum, or that any sum was actually paid him. To have allowed salaries, which had never been paid, would have been, as was said in *Rubber Co.* v. *Goodyear*, to permit a dividend of profits under the guise of salaries.

Other exceptions that were taken to the master's report were satisfactorily disposed of by the court below, and do not call for further discussion.

The decree of the Circuit Court is accordingly

*Affirmed.*