### KARESH et al. v. SHELL–ON SOL–TED PEANUT CO. et al.

(District Court, D. Maryland. February 18, 1927.)

1. **Patents ⟝328—Patent for salting peanuts in shell held valid and infringed.**

Baker patent for process of salting peanuts in the shell *held* valid and infringed.

2. **Patents ⟝118—Specifications are sufficient if they apprise persons skilled in the art of the salient features of the invention.**

Specifications of a patent are addressed to persons skilled in the art, and a description sufficient to apprise them of the salient features of the invention are sufficiently definite.

3. **Patents ⟝175—Specifications describing "green peanuts" held applicable to raw, rather than unripe, peanuts.**

Specifications of patent for process of salting peanuts in the shell, describing "green peanuts," *held* applicable to raw, rather than unripe, peanuts.

4. **Patents ⟝118—Specification of patent for process of salting peanuts in shell, without stating time and amount of pressure, held sufficient.**

Specification of patent for process of salting peanuts in the shell *held* sufficient, though the time and the amount of the pressure are not definitely fixed.

5. **Patents ⟝118—Patent is sufficient if it points out how process can be effected, without disclosing most efficient apparatus.**

It is not necessary to the validity of patent that most efficient apparatus to carry out process should be disclosed, but it is sufficient if the patent points out how the process can be effected.

6. **Patents ⟝289(2)—Complainant in infringement suit held not guilty of laches.**

In suit for patent infringement, evidence *held* insufficient to establish laches, depriving plaintiff of injunction and accounting.

In Equity. Suit by Hyman Baker, for whom D. Karesh and another, executors of the estate of Hyman Baker, were substituted, against the Shell-On Sol-Ted Peanut Company and another. Decree for plaintiffs.

Matthew Gault, Richard F. Cleveland, and Harry H. Semmes (of Semmes, Bowen & Semmes), all of Baltimore, Md., for plaintiffs.

Edwin F. Samuels, of Baltimore, Md., for defendants.

SOPER, District Judge. Hyman Baker, the patentee and original plaintiff herein, died pending the trial of the case. The present plaintiffs are the executors of his estate, and were substituted by appropriate proceedings. The patent in suit is the patent to Frank Baker and Hyman Baker, granted August 9, 1910, on an application filed September 25, 1909. By subsequent conveyances, the entire interest in the patent was vested in Hyman Baker. The patent relates to a process of salting peanuts in the shell, and is particularly directed to a method of producing salted peanuts without the removal of the nuts from the shells, thereby insuring absolute cleanliness and purity of the finished product. The specification states that in the usual method, the shells are first removed and the nuts boiled in a saline solution. This method is said to be objectionable, as it exposes the nut to any existing deleterious influences, and produces an indigestible product as a result of the boiling. The invention is designed to obviate these objections, and is furthermore a distinct advantage from a commercial standpoint, since it avoids the necessity of shelling the nuts or the use of a heated solution.

In carrying out the process, the nuts in their original green state are placed in a suitable container, to which the desired quantity of saline solution is added. Pressure is then applied which, in the green condition of the shells, readily forces open the pores of the shells and introduces the saline solution. Then the nuts, while still in the shells, are subjected to the action of heat to evaporate the liquid within the shells, and the nuts are then roasted in the usual manner.

The specification shows a simple illustrative type of apparatus for carrying out the improved method. It consists of a container or cylindrical vessel of appropriate size of a material to resist pressure, having preferably a lining of material such as brass, which is not affected by the solution. The

17 F.(2d)—32

cylinder is closed at the lower end and open at the upper end. A cylinder head or follower is arranged therein, having an airtight connection with the interior surface of the cylinder. The nuts and saline solution are introduced into the cylinder to induce that pressure on the solution which will compel the latter to enter the pores of the shells without breaking them.

There are eight claims in the patent, of which the following may be taken as illustrative:

"1. The herein described method of treating nuts while in the shell consisting in introducing the treating solution while cold through the pores of the shell by pressure.

"2. The herein described method of treating nuts while in the shell consisting in immersing the nuts with their shells unbroken in the treating solution, subjecting the nuts and solution to pressure to simultaneously force the air from the shells and introduce the solution therein, and evaporating the shell contained liquid."

"4. The herein described method of salting peanuts, consisting in immersing the nuts with their shells unbroken in a cold saline solution and subjecting the nuts and solution to pressure sufficient to force the solution into the nuts."

"7. The herein described method of salting nuts consisting in immersing the nuts with their shells unbroken in the treating solution, subjecting the nuts and solution to a pressure sufficient to force the solution into the nut through the shell without disrupting the shell."

The main contention of the defendants is that the patent is invalid for lack of invention, as shown by certain evidence of prior public use, and by certain patents in the prior art cited in anticipation. The evidence of prior use is entitled to but little consideration. It relates, in the first place, to a process described in the Potter patent, hereinafter discussed, of salting peanuts in the shell by boiling them in a saline solution. A second method was mentioned in certain hearsay testimony of the defendant Sawkins. It consisted of submerging nuts, such as pistachio nuts or chesnuts, in a covered vessel containing a cold or unheated solution. No pressure was added to that caused by the atmosphere and the solution by which the nuts were surrounded. It is sufficient to say that this evidence is too inconclusive to establish the facts described, even if they showed, as they do not, an anticipation of the Baker invention.

More emphasis may be put upon the disclosures of the art as shown by prior patents. The file wrapper of the patent in suit shows that the claims were first rejected on the patent to Potter and the patent to Moyer, each of the year 1902. The Potter patent covers a process for salting peanuts in the shell. The nuts are placed in raw condition in water, to which salt has been added, and then boiled so that the salt permeates the shells. After the boiling has been sufficiently done, the nuts are removed from the water and dried and roasted while still in the shell. The Moyer patent also relates to a process for salting peanuts in the shell. The primary and essential step is the injection of brine through a perforation in the shell of the nut made by the pointed nozzle of a plunger designed to effect the introduction of the solution. It is necessary to penetrate the shell of every nut. Afterwards the surplus fluid is evaporated by placing the nuts in a dryer, and finally the nuts are roasted.

The examiner cited these patents, and said in addition that the process of impregnating articles of food with a preservative, through the pores of the containing shell, is old in the patent to Green of 1903, which covers a process for preserving eggs. The air inside the shell is first exhausted; then an antiseptic, preferably sulphur fumes, is applied so as to enter the eggs through the pores of the shells. The fumes in turn are removed, and a liquid filler, such as soluble glass, is used to close the pores.

The examiner further said that the broad idea of impregnating organic matter with a salt solution under pressure is very old in the art of preserving, and it is also old to subsequently dry impregnating articles, as in wood saturation. He thought that, if there was an invention, it rested in the specific conditions under which, in the patent in suit, the whole process is carried out. He suggested that the pressure must be applied under conditions which would avoid breaking the shells and would replace the air within by a salt solution, continuing the pressure until the meat of the nuts is salted.

Certain amendments of the claims were then made, and the applicants pointed out the differences between the process of their invention and those involved in the prior art. It was shown that the preliminary step of boiling the peanuts in the Potter process is eliminated, and instead the impregnation of the nuts is accomplished by pressure. The separate perforation of the shell of each peanut, as in the Moyer process, is also avoided. The penetration of the shells of the peanuts is caused by pressure, and not by creating a vacuum as in the Green process. Furthermore the impregnating substance is not withdrawn, as in the latter process, but is introduced and remains on the inside of the shells while the air is simultaneously expelled. The shells are not coated to prevent the further entrance of air.

The applicants admitted that it was not new to impregnate a porous material with a liquid, but argued that it was new to use the particular liquid, to wit, a saline solution, to treat a particular product, to wit, nuts while in the shell, and to use pressure for the dual purpose of forcing air from the interior of the shells and at the same time forcing the liquid into the shells while preserving the shells unbroken. It is a fact that there is nothing in the record in the Patent Office or in the record in this court to show an anticipation of the impregnation of an article of food by pressure through the pores of an inclosing shell.

The defendants now contend that three of the steps of the process of the patent in suit are specifically anticipated in the Potter and Moyer patents, to wit: (1) the saturation or impregnation of the peanuts in brine; (2) the drying of the nuts so as to evaporate the surplus moisture; and (3) the roasting of the nuts. The only step which is contained in the Baker patent, and is not found in the Potter and Moyer patents is the application of pressure to the saline solution. This step, the defendants contend, is found in quite a number of prior patents introduced in evidence. Of these it is necessary to refer only to three, to wit, two patents to Wheat of 1878, and the patent to Payne of 1850. The Wheat patents relate to a process for salting and curing meats by means of cold solutions. The meat is placed in a receptacle filled with brine, and subjected by means of a pump to pressure within the receptacle in an amount preferably of 75 pounds to the square inch. The pressure is alternately increased and decreased during several periods, during which the meat is thoroughly impregnated. The Payne patent relates to a process for preserving wood or vegetable matter, which is placed in a strong vessel capable of bearing considerable pressure. As good a vacuum is obtained as possible so as to exhaust the air from the fibers. The vessel is then filled with a preserving solution and allowed to stand for a short time, and then, by the use of force pumps or by columnal pressure, the liquor in the vessel is pressed into the vegetable matter.

[1] None of the last-mentioned patents was specifically referred to by the examiner, and the defendants therefore contend that the presumption of validity arising from the grant of the patent is greatly weakened, if not destroyed. International Flat Stub Check Book Co. v. Young & Selden (C. C. A.) 284 F. 831. But the examiner had in mind, and expressly stated, the substance of these discoveries, so far as they are pertinent to the patent in suit, when he said that "the broad idea of impregnating organic matter with a salt solution under pressure is very old in the art of preserving." Consequently the presumption of validity is entitled to its full force in this case. Bearing it in mind, the court finds that the Baker process involved invention for the reasons set out by the inventors in their arguments before the examiner, hereinbefore mentioned; particularly since it is new to impregnate a food stuff with a saline solution by forcing it through the pores of a containing shell.

The defendants also contend that the patent is invalid by reason of certain technical defects which render it invalid. In the first place it is said that all of the claims, except claim 7, contain new matter introduced by amendment, but not described in the specification, and therefore not verified by oath as required by R. S. § 4892 (Comp. St. § 9436). The new matter consists, as to claims 1, 3, and 4, of the introduction of the words "while cold" after the word "solution," whereby it is indicated that the solution introduced under pressure is cold when applied. The new matter added to claims 2, 5, 6, and 8 consists of the statement, in substance, that the air is forced from the shells simultaneously with the introduction therein of the saline solution.

So far as the temperature of the solution is concerned, it suffices to say that the absence of heat is suggested by the inventors' statement in the specification of the distinct commercial advantage of their process, in that it does not require a heated solution. Obviously the term "cold," as used in the claims, means "unheated." The amendment of claims 1, 3, and 4 to cover this thought did not set out a new invention. Nor is the statement as to the expulsion of air from the shells in claims 2, 5, 6, and 8 an alteration of the process originally described. It was no doubt suggested by a theory advanced by the examiner prior to the amendment of the claims that, when the solution is pressed through the pores of the shells, it replaces the air within. The inventors adopted the suggestion, and inserted it in the claims mentioned as an explanation of what occurs in the operation of their process. It is, however, not certain that the theory is correct. The defendants' expert is of the opinion that very likely there is little or no expulsion of the air from the shells, but that room is made for the solution inside by condensation of the air under pressure, and that, when the pressure is removed after the impregnation of the nuts, the expansion of the air serves to expel at least part of the liquid content. However this may be, it is clear that the amendment of the claims did not signify the alteration of the process by the introduction of a new step. No change was in fact made in the details of the practical operation of the process, as disclosed by the specification. Nor was the alteration an explanation of the process required to differentiate it from the prior art cited in anticipation. The gist of the patent is the salting of the peanuts by forcing the solution through the pores of the shell, and this effect is obtained whether the air is in or out of the shells when the solution comes in contact with the kernels. Thus the case differs from Steward v. American Lava Co., 215 U. S. 161, 30 S. Ct. 46, 54 L. Ed. 139 and Casein Co. v. A. M. Collins Mfg. Co. (C. C. A.) 174 F. 341, wherein the new matter introduced by the amendment, unsupported by oath, was essential to distinguish the invention from anticipating processes. The new matter in the patent in suit was inserted in the claims, supported by a specification which remained unchanged, as in Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf B. Co. (C. C. A.) 230 F. 120. But, even if claims 2, 5, 6, and 8 should be held invalid by reason of the introduction of new matter, it would not avail the defendants, since, as will hereafter be seen, they have also infringed the remaining claims of the patent.

The defendants also invoke the rule that the correct and adequate description of a claimed discovery is essential to the validity of a patent for the reason that such a disclosure is necessary in order to give the public the benefit of the invention after the patent shall expire. Beidler v. United States, 253 U. S. 447, 40 S. Ct. 564, 64 L. Ed. 1006. They say that the disclosures of the specification and the claims are insufficient in several respects. The specification prescribes "green peanuts," and it is said that "green" means either green in color or unripe, and

must in this case mean unripe, and that therefore the patent describes an article unsuitable for the purpose of the inventors. The disclosure as to the kind of pressure is inadequate, it is said, since neither the intensity of the pressure nor the period during which it must be applied is described. Finally it is claimed that the machine itself described in the specification is inadequate to furnish the pressure. An air-tight connection between the cylinder head and the interior surface of the cylinder is expressly specified, but it is said that the arrangement of the parts of the machine is so faulty that it is very likely unable to furnish the required power.

[2, 3] These points are obviously highly technical. It is well settled that specifications of a patent are addressed to persons skilled in the art and a description sufficient to apprise them of the salient features of the invention are sufficiently definite. Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279; Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 22 S. Ct. 698, 46 L. Ed. 968. Considering the specific objections, it may be noted in the first place that the word "green" may very properly mean "not baked or roasted; raw or partly raw, such as green meats, green bricks, or pottery." See Webster's International Dictionary. That the patentees intended to indicate "raw" rather than "unripe" nuts by the term "green" is too clear for argument.

[4] It is true that the time and the amount of the pressure are not definitely fixed, but it should be borne in mind that the nature of the subject-matter makes it impossible to prescribe them accurately. Peanuts vary as to the thickness of the shells, and the pressure must vary with it. The end in view is made perfectly clear by the express terms of the specification. The pressure must be sufficient to cause the solution to penetrate the pores of the shells without breaking the shells. While it might have been possible to have approximated the number of pounds pressure per square inch, and the time during which it should be applied, nevertheless it is clear that, in the absence of such approximation, the proper pressure to be used can be readily ascertained by one endowed with mechanical skill. For the comprehension of persons skilled in the art, the requirements as to pressure are sufficiently definite. Seabury v. Am Ende, 152 U. S. 561, 14 S. Ct. 683, 38 L. Ed. 553; Mowry v. Whitney, 81 U. S. (14 Wall.) 620, 626, 20 L. Ed. 860.

[5] Even less worthy of comment is the defendants' criticism of the apparatus suggested for the application of pressure. It is not necessary to the validity of the patent that the most efficient apparatus to carry out the process should be disclosed. It is sufficient if the patent points out how the process can be effected. The device suggested by the specification is a very simple one. It is indeed very old to compress gases or liquids in a confined chamber by the action of a cylinder head or follower. Even if an air-tight connection between the parts of the apparatus had not been specified, it would follow as a matter of common knowledge that such connection was necessary to secure the necessary pressure. It is not essential to describe in detail what is obvious to a person skilled in the art. Eames v. Andrews, 122 U. S. 40, 58, 7 S. Ct. 1073, 30 L. Ed. 1064.

The defendants claim that their process does not infringe the patent in suit, but it is somewhat difficult to comprehend the basis of their argument. Their process is substantially as follows: The peanuts are placed in galvanized iron mesh baskets, 6 inches deep and 20 inches in diameter, and are cleaned very thoroughly with hydrant water. Three or four baskets containing the cleaned peanuts are then placed in a vertical cylinder, one on top of the other. On top of the whole is placed a steel circular plate weighted to keep the peanuts from floating. The whole tank is closed by a circular plate on top. The brine solution, at atmospheric temperature, is then let into the tank by gravity from the reservoir of the salt solution. Then air pressure is applied so as to bring up the pressure in the tank to 45 pounds per square inch. The pressure is continued for a short period, when a valve is opened, whereupon the brine is forced back to its original receptacle. After a certain length of time, the baskets of nuts are taken out of the tank, and, after drying, are roasted in a cylindrical glass retort. The whole operation consumes from one-half to three-quarters of an hour. This process differs from that of the patent in suit only in the manner in which the pressure is applied, and, as to this step, adopts a substantial equivalent. Infringement of each of the claims of the patent in suit is made out.

There is not only infringement by the Shell-On Sol-Ted Peanut Company, but also by the individual defendant, Huntington D. Sawkins, who is a direct as well as a contributor infringer. He is an executive of the corporate defendant; and had a share in its infringing operations. Moreover, he trades

in his individual capacity as the Mechanical Machine Works, and under this name manufactured machines to be used by the corporation for the production of salted peanuts under the process described. Such conduct constitutes contributory infringement. Loew Filter Co. v. German-American Filter Co. (C. C. A.) 107 F. 949; Solva Waterproof Glue Co. v. Perkins (C. C. A.) 251 F. 64, 73; Union Electric Welding Co. v. Curry (C. C. A.) 279 F. 465.

[6] The defendants also rely upon the alleged laches of the patentee. The defense seems to be based upon the allegation that the patent in suit has not been generally respected, but has been infringed by a number of persons without objection by the inventor. The charge is that the defendant Sawkins was an employee of the Mechanical Machine & Tool Works of Chicago for a period beginning in 1916 and ending in 1923. The business of the concern was the manufacture of machines for salting peanuts, and Sawkins was a salesman. In 1923 he purchased from his employer certain machines and also the exclusive rights to manufacture salted peanuts under a patent then pending. The details of the patent, except that it involved the use of pressure, are not disclosed by the evidence. The process was not a practical success, and it was not until some time in the year 1924 that Sawkins, after continuous experiments, made it operative. After purchasing the machines and the process, he was notified by the patentee that the process was an infringement upon the patent in suit.

This is the most favorable statement which can be made on behalf of the defendants. As a matter of fact, the evidence does not support it in all of its details. There is no evidence in the record which would justify the conclusion that during the years prior to 1924 there was an extensive disregard of the patent in suit of which the owner of the patent had notice. The only evidence in the record tending to show a general disregard of the patent is the testimony by Sawkins that in 1924 he understood that there were several people infringing the Baker patent. The source of his information, the identity of the infringers, and the character of their processes is not even hinted at, except that the name of the Fisher Roasting Company of St. Paul as an infringer in the year 1924 is given. On the other hand, the evidence shows quite clearly that a letter, under date of January 4, 1923, from the attorneys of Hyman Baker, was received by Sawkins in Baltimore, charging him with infringement of the Baker patent. In the year 1924, beginning in April and ending in December, negotiations took place between Baker on the one side and Sawkins on the other, looking toward a purchase by Sawkins of the patent in suit. The purchase, however, was not made. Sawkins explained that his purpose in seeking to buy the patent was his understanding that certain persons were infringing it, and that, if he bought it, he would be able to stop them, apparently for the purpose of preventing competition with his own business in Baltimore. It is quite obvious from this recital of the facts that there was no such laches on the part of Baker as to lull the defendants into a sense of security, or to deprive the plaintiffs of the right to press the suit at bar, not only for an injunction, but for an accounting. Benthall Machine Co. v. National Machine Corporation (D. C.) 222 F. 918; Frank F. Smith Hardware Co. v. S. H. Pomeroy Co. (C. C. A.) 299 F. 544.

A decree will be signed in accordance with this opinion.