**ZENITHERM CO., Inc., v. ART MARBLE CO. OF AMERICA et al.**

No. 307.

District Court, S. D. Mississippi, Jackson Division.

Nov. 29, 1930.

F. Lewis Peyton, Jr., of Jackson, Miss., and Mitchell & Bechert, of New York City, for plaintiff.

W. H. Watkins, of Jackson, Miss., and Roland C. Rehm, of Chicago, Ill. (Creekmore & Creekmore, of Jackson, Miss., on the brief), for defendants.

HOLMES, District Judge.

This is a suit in equity alleging infringement of claims 1 and 4 of Sutter patent, No. 1,183,694, issued May 16, 1916, praying for an injunction and an accounting.

The patent relates to a process of producing fireproof insulating building material, recited to be of great structural strength, requiring no supporting walls, and of equal or greater insulating value than any such in general use when the patent was issued, with the additional advantages stated that it is nonhygroscopic, sound-deadening, nonwarping, may be worked as wood, and readily takes any finish that may be placed on wood or any enamel baking such as is used on enameled iron ware; also, that the material may be cast or molded into any shape or form.

The plaintiff's product is known as Zenitherm, the defendant's as X-ite. The fin-

ished article as manufactured by each is not a stone, but is essentially a wood product, though it may be made more nearly a stone product by varying the proportions of the materials used.

The defenses are invalidity and noninfringement, the former with a double and the latter with a triple aspect.

That of invalidity is based upon (1) vagueness in the specification and claims, and (2) anticipation by prior expired patents.

That of noninfringement asserts: (1) That the defendant omits the third essential step of the process by not pressing its product; (2) that defendant is justified by prior art patents which forbid a construction of plaintiff's patent to cover defendant's process and product; and (3) that generally neither the plaintiff nor defendant is practicing the process or producing the product of the patent.

The third defensive aspect of noninfringement is susceptible of a further analysis:

(a) That the Sutter patent is limited to insulating building material of a character which excludes X-ite, the defendant's product.

(b) That it is limited to a "building block" requiring "no supporting walls," and that X-ite and the present Zenitherm are thin, decorative slabs requiring supporting walls.

(c) That it is limited to a product using "fireproof" cement and the defendant uses magnesium oxychloride cement which decomposes under a low heat.

(d) That it is limited to a binder which is of itself an adhesive substance, which neither party uses.

(e) That the patent does not specify either as an alternative or otherwise a single ingredient used by the defendant in producing X-ite.

Out of the facts the law arises, but a brief preliminary statement of the law is often helpful in analyzing facts. There is a remarkably succinct one in Tilghman v. Proctor, 102 U. S. 707, 727, 26 L. Ed. 279. It is the following quotation from a former opinion by the chief justice which the court says will afford the key to almost every case that can arise:

"Whoever discovers that a certain useful result will be produced, in any art, machine, manufacture, or composition of matter, by the use of certain means, is entitled to a patent for it; provided he specifies the means he uses in a manner so full and exact that any one skilled in the science to which it appertains can, by using the means he specifies, without any addition to or subtraction from them, produce precisely the result he describes. And if this cannot be done by the means he describes, the patent is void. And if it can be done, then the patent confers on him the exclusive right to use the means he specifies to produce the result or effect he describes, and nothing more. And it makes no difference, in this respect, whether the effect is produced by chemical agency or combination; or by the application of discoveries or principles in natural philosophy, known or unknown before his invention; or by machinery acting altogether upon mechanical principles. In either case, he must describe the manner or process as above mentioned, and the end it accomplishes. And any one may lawfully accomplish the same end without infringing the patent, if he uses means substantially different from those described."

The claims in suit are as follows:

"1. The process of making a fireproof insulating material of great structural strength which consists in mixing granulated vegetable matter in its natural state with granulated mineral matter until each particle of vegetable matter is coated with the mineral matter, mixing the product with a binder in fluid condition and compressing the material into a homogeneous mass."

"4. As a new product a composition of matter consisting of finely ground or granulated vegetable matter, retaining all its natural resins, each particle coated with a fireproof clay and some suitable binder, the coated particles being in close contact with each other in one homogeneous mass of great structural strength, fireproof and possessing high insulating, non-hygroscopic and sound-deadening properties, substantially as described."

The process, it is said, has three essential steps: First, the coating of every particle of the cork, wood chips, or shavings with magnesia; second, wetting the mixture with a liquid binder such as magnesium chloride solution; and, third, compressing these mixed materials into a homogeneous mass.

In the first step, no quantities or proportions for the mixture are given in the specification or claims except "sufficient powdered oxid of magnesia * * * to completely cover or coat each particle of cork." In practicing the process plaintiff claims to use a minimum amount of cement, but this is denied; testimony for the defendant being to

the effect that twenty times the minimum amount is used in what is known as Zenitherm's typical mix and ten times the minimum amount in the production of X-ite.

In the second step, no quantities or proportions are given for the binder to be used. The illustration in the specification simply says: "And then add a solution of acetyl cellulose as a binder." This solution admittedly is not used by either plaintiff or defendant. The claim in suit only provides for "mixing the product with a binder in fluid condition."

With reference to the third step, the most definite provision in either specification or claims is to subject the mixture "to sufficient pressure to form one homogeneous mass." The plaintiff practices this step by using hydraulic pressure of about 2,500 to 3,000 pounds per square inch, but is seeking to restrain the defendant from the use of any pressure, mechanical or otherwise, even such slight pressure as is involved in packing the material into a mold by hand.

After hearing the witnesses orally, and reading the transcribed testimony, I have re-examined the nearly one hundred exhibits and am convinced that the products to be obtained by operating under the vague terms of the plaintiff's patent may differ widely in outward appearance, material ingredients, and commercial utility, so widely as to duplicate many articles well known in the prior art, and that regardless of how skilled one might be in the art he could not learn to manufacture the plaintiff's product from the specification and claims of the patent in suit without experimenting under it. In fact, the inference is strong from the testimony that the plaintiff itself experimented for several years after the issuance of the Sutter patent before evolving its present product.

To put forth a problem for experiment to solve defeats the purpose of Congress in authorizing the grant of patents which was to stimulate inventions and encourage their disclosure to the public.

■ The failure to give the relative proportions of the different ingredients renders the patent void. The Incandescent Lamp Patent, 159 U. S. 465, 475, 16 S. Ct. 75, 40 L. Ed. 221.

In Wood v. Underhill, 5 How. 1, 5, 12 L. Ed. 23, with respect to a patented compound for the purpose of making brick or tile, which did not give the relative proportions of the different ingredients, the court said:

"But when the specification of a new com-position of matter gives only the names of the substances which are to be mixed together, without stating any relative proportion, undoubtedly it would be the duty of the court to declare the patent to be void. And the same rule would prevail where it was apparent that the proportions were stated ambiguously and vaguely. For in such cases it would be evident, on the face of the specification, that no one could use the invention without first ascertaining by experiment the exact proportion of the different ingredients required to produce the result intended to be obtained. * * * And if, from the nature and character of the ingredients to be used, they are not susceptible of such exact description, the inventor is not entitled to a patent."

So in Tyler v. Boston, 7 Wall. 327, 330, 19 L. Ed. 93, where the plaintiff professed to have discovered a combination of fusil oil with the mineral and earth oils, constituting a burning fluid, the court said:

"Where a patent is claimed for such a discovery, it should state the component parts of the new manufacture claimed with clearness and precision, and not leave the person attempting to use the discovery to find it out 'by experiment.'"

Neither is the amount of pressure indicated except by the singular use of the word homogeneous. The necessity for any pressure at all admittedly depends upon the relative proportions of the ingredients of the mixture producing a loose, friable mass, instead of a pasty, confluent substance, which can be poured into a cast or pressed into a mold. Having given no proportions of the ingredients, the patentee for the final step merely specifies "sufficient pressure to form one homogeneous mass." But the point at which, under pressure, a heterogeneous mass of mineral and vegetable matter would become homogeneous, that is, of the same material, organic or inorganic, is not stated and might be prolific of much litigation and the source of profound philosophical discussion.

■ If Dr. Sutter intended to provide for sufficiently heavy pressure to form a solid mass by compression instead of by mixing, this uncertain specification might not be objectionable provided he had given the relative proportions of the ingredients which would not become solid (or homogeneous) by mixing but would remain, notwithstanding the mixing, a loose, friable mass until the pressure was applied. But the failure to give any relative proportions, coupled with the failure to specify the amount or kind of pressure, puts even those skilled in the art to

the necessity of finding out the gist of the invention by experiment. This is fatal and renders the patent void for two reasons: (1) Because it does not disclose to the public how the discovery, if there be one, can be made useful, and (2) how its infringement may be avôided. Eibel Process Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523. See, also, Bullock Electric Mfg. Co. v. General Electric Co. (C. C. A.) 149 F. 409.

The foregoing authorities are markedly different from Seabury v. Am Ende, 152 U. S. 561, 14 S. Ct. 683, 684, 38 L. Ed. 553, relied upon by the plaintiff, wherein the patentee produced, as a new product, an antiseptic bandage which was composed of lint cotton, boracic acid, and glycerine. The inventor did not say how to mix the boracic acid, nor what strength it should be, nor exactly how much glycerine to employ. But the court held that the solution of boracic acid referred to was well known to druggists and physicians, and that when the patentee says "he 'prepares a solution of boracic acid in the usual manner,' he means as it has formerly and customarily been prepared." And further: "When he directs that a small proportion of glycerine shall be added, it is obvious that the quantity of the glycerine is to vary with the amount of cotton and boracic acid used, but that the merits of the invention will not depend on whether, in a given case, a little more or less glycerine is used."

But in the Sutter patent the merits of the invention depend upon the relative proportions of the shavings and cement. If a small quantity of shavings and a large quantity of cement is used, no pressure, other than that required in molding, is necessary because the mixture will become solid (or homogeneous) by the mere process of mixing and pressing into a mold. On the other hand, if the relative proportions are varied by increasing the quantity of shavings and decreasing the quantity of cement, it will be found that the amount of pressure must be increased accordingly until heavy hydraulic pressure of several thousand pounds is required with a maximum of shavings and a minimum of cement. The merits of the invention depend upon these latter proportions. Likewise in Karesh v. Shell-On Sol-Ted Peanut Co: (D. C.) 17 F.(2d) 496, the amount of pressure is not given because the invention did not depend upon it. The distinction between these and similar authorities relied upon by the plaintiff and the case under consideration will be further emphasized when we observe the construction heretofore put upon the Sutter patent at the instance of plaintiff's at-

torneys to the effect that the essence of the patent, and its chief value consisted in the fact that it called for great pressure and a minimum amount of cement.

The defendant also seeks refuge in the prior art and has pleaded thirty expired patents which fall into two groups, the first of which is directed to such products as that disclosed by the patent, and tends to support the defense of invalidity by reason of anticipation; the second relates to the justification of defendant's practice in making an oxychloride cement product, such as X-ite, and tends to sustain the defense of noninfringement. These two groups often overlap because, by failing to specify relative proportions and amount of pressure, the Sutter patent covers all articles produced by mixing, in the order named, vegetable and mineral matter with a binder and using any pressure to form a solid mass; but such a construction is clearly anticipated and is broader than is contended for by the plaintiff.

▮ Whatever the patentee may have had in mind, we know that his invention is limited by the prior art and that his patent must be so narrowed, even though the prior art is not broad enough to invalidate it entirely. Therefore, it becomes simpler to consider the prior art and the construction of the plaintiff's patent under the defense of noninfringement.

The plaintiff construes the novel feature of his patent to be the formation of a loose aggregation of thinly coated chips to which is applied heavy pressure, thus using a minimum amount of cement and producing what is substantially a wood product. It freely concedes that pressure is old in molding, for example, in brick making, but denies that "any of the prior art teaches how to make a loose aggregation of chips, lightly coated with cement material—an aggregation which can actually be compressed—and then press this loose aggregation into a homogeneous mass or slab. That, it is submitted, is novel, and that, it is submitted, is an important contribution of the Sutter patent and marks a substantial step forward in the art."

I cannot find anything in the patent to justify this interpretation. "Loose aggregation," "thinly coated chips," and "minimum amount of cement," are all of the things except pressure which it is claimed make the process novel, and none of the three is mentioned by the patentee.

We have examined the alleged invention, first in the language of the patentee, and

then in that of counsel for the assignee over ten years later. Let us now compare with these the defendant's method.

X-ite is a product composed of wood shavings held together with magnesium oxychloride cement. The amount of cement used is many times the minimum which would be necessary if defendant economized by using less cement and great pressure.

X-ite is produced by mixing first the magnesite and binder, pouring in coloring matter, and then adding the wood shavings gradually while the mixer continues to turn. The mixture is then put into molds, packed into the corners by hand or with a float, and leveled off with a stick. The proportions are 60 pounds of magnesite, 20 pounds of chloride, 5 pounds of asbestos, 3 pounds of yellow ochre, and 8 pounds of clay.

The process is wholly disclosed by the prior art. British Sorel, No. 11259, of 1891, is one of the patents proven in this case. It discloses a composition made of chopped wood cemented together by an oxychloride cement consisting of magnesium oxide and magnesium chloride. The patentee gives a formula from which defendant's Exhibit D–46 was made up. Mr. Hogan, plaintiff's expert, criticizes this composition because the formula uses the word "mortar," but it is wholly immaterial what Sorel calls his mixture. He says he mixes and kneads the ingredients "in the same way as when making an ordinary mortar" and then molds the composition into the desired form. Sutter says: "After thoroughly mixing this mass it is placed into a mold and subjected to sufficient pressure to form one homogeneous mass." Sorel says: "The degree of solidity (that is the homogeneity) of the products can be varied by varying the proportion of oxychloride of magnesium."

The mixing of the ingredients under Sorel is identical with the process employed by the defendant in making the material for the Walthall Hotel. All of the ingredients were placed in a mortar box and mixed "in the same way as when making an ordinary mortar." Of course, the process of molding includes tamping the material into a mold. When there is sufficient fluidity to pour in the mixture without tamping, it is casting.

Mr. Hogan, in analyzing British Sorel, No. 11259, and other expired patents, frequently says "there is no pressure for the purpose of producing homogeneity." This is immaterial. The pressure produces a solid slab (call it what you will) which is all the plaintiff's pressure does.

A multiplicity of expressions are found in the prior art to denote the kind and amount of pressure to be applied. "Heavy pressure," "light pressure," "suitable pressure," "subjected to pressure," "solidified by pressure," "great pressure," "hydraulic pressure," pressing the mass "to solidity," "pressure to a sufficiently solid and indissoluble state," "solidity by means of any suitable press," pressure "in molds or by hand," between "rollers, plates, or other mechanical devices," and "pressed to a solid consistency, the degree of solidity depending upon the pressure applied," are some of the words and phrases used in the expired patents pleaded in justification.

Homogeneity in Sutter and solidity in Sorel probably mean the same thing. Patentees are allowed much latitude in terminology, and the courts will ascribe to their language the meaning intended if it can be gotten from the context, but it is not invention to give to an old process a new name or attribute to it a new purpose.

Mr. Hogan criticizes Thiemer, United States No. 310405, because "there are no proportions stated with the definiteness required to make a product," and because "there is no disclosure of a loose mix." I have already pointed out the same in Sutter. British Wade, No. 156, of 1887, he says is not fireproof. The same is certainly true of X-ite and probably of Zenitherm. British Thielmann, No. 13774, of 1889, is pointed out to be another where wood fiber is kneaded into a paste. "It pours into a mold," but "is not a material which requires pressing for homogeneity." This language of Mr. Hogan applies equally to X-ite.

Other illustrations are afforded from reading the record, but it will suffice to say that the plaintiff's expert in criticizing the prior art for indefiniteness and failure to give proportions criticizes Sutter and in distinguishing the prior art distinguishes X-ite. In order to escape Scylla and Charybdis, it is not permissible to read the prior art and the patent in suit under radically different rules of construction.

The plaintiff's patent was held valid and infringed by the Circuit Court of Appeals for the Third Circuit in the case of Craft-Stone v. Zenitherm Co. (C. C. A.) 22 F.(2d) 401.

The issues and proof in that case were entirely different from this. In the outset the plaintiff there disclaimed the unpressed product and the defendant did not seriously deny that the plaintiff was practicing the

process and producing the product of the patent.

The two defenses of noninfringement and invalidity were practically comprised in the questions (1) whether the defendant was practicing and producing the same process and product as that of the plaintiff, and (2) whether the patent was void because anticipated by about forty-five prior patents. The proof being quite clear as to the former, a simple question of fact, the court devoted most of its consideration to the question of validity, which it stated was the primary one.

The opinion makes it clear that the mixing of the ingredients, the use of a minimum amount of cement, leaving a loose aggregation of incompacted matter, and heavy compression into a homogeneous mass, under a pressure of about 2,500 to 3,000 pounds per square inch, as practiced by the plaintiff, were the distinguishing characteristics of the process, as shown by the proof in that case, and constituted the basis upon which the patent was sustained. The plaintiffs in their briefs successfully urged upon the court the view that all of the prior art patents produce pasty masses which are made homogeneous by mixing, while Dr. Sutter produces a loose or nonhomogeneous mass and obtains homogeneity by heavy compression, thus saving a material amount of mineral matter and binder. The patentee disclosed no such invention, but without such a construction it is clear that the Sutter patent would not have been held valid against the defense of anticipation by prior art patents.

I have read all of the testimony in the above case, and respectfully considered and reconsidered the opinions of both the District Court and the Court of Appeals with every inclination to give effect, if applicable, to the doctrine of comity, but find the issues and proof in the case at bar, as well as the points raised in the argument, to be so entirely different as to compel me to determine them in the light of the authorities according to the facts shown here.

None of the thirty prior art patents pleaded here were included in the former litigation. The plaintiff avoided anticipation in the Third Circuit because the Court of Appeals took the view urged by it, and all but assented to by the defendant, that the patent called for heavy compression and a minimum amount of cement, and that Zenitherm and Craft-Stone alike used both.

We have seen that the patent in suit discloses no such process and that the plaintiff here has abandoned the heavy pressure theory.

Under the proof and arguments presented in the Craft-Stone case, it is not difficult to perceive how the court arrived at its conclusion. But here the plaintiff's patent discloses no specific ingredient of the defendant's process and product, nor any combination of the same, and we are forced to a contrary decision.

A decree will be entered dismissing the bill.