27 C.C.P.A. (Patents)

## In re DENNING.

### Patent Appeals No. 4174.

Court of Customs and Patent Appeals.
Dec. 26, 1939.

Zabel, Carlson & Wells, of Chicago, Ill. (Max W. Zabel and Greek Wells, both of Chicago, Ill., of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

All the claims of appellant's application for a patent for "Improvements in Frozen Food Products," being claims numbered 2, 3, 4, 7, 8, 10, 11 and 12, were rejected by the Primary Examiner of the United States Patent Office for reasons hereinafter stated, and upon appeal the Board of Appeals, for substantially the same reasons as those assigned by the examiner, affirmed his decision. From the decision of the board, appeal has been taken here. At the hearing in this court, appellant moved that the appeal as to claims 3 and 4 be dismissed which motion will be granted.

The references relied upon are: Zoller, 1,598,033, August 31, 1926; Cosler, 1,659,723, February 21, 1928; Maxwell, 1,760,654, May 27, 1930; Turnbow, 1,939,326, December 12, 1933.

Claims 2, 7, 8, 10, 11 and 12, all the remaining claims on appeal, follow:

"2. A product for making a frozen milk product consisting substantially of milk solids, sweeting material and flavoring, which contains an alkali caseinate, a soluble salt of an alkali base with a weak acid, and milk.

"7. A product for the home freezing of milk products, containing a soluble edible casein, a salt of an alkali base with a weak acid for increasing the whipping properties of the product and milk or cream, said product having a small percentage of gelatine therein.

"8. A milk product for the home freezing of ice cream, or ice milk, said product containing about half its milk solids in the form of a soluble edible casein and containing also a sodium citrate for increasing the whipping properties of the product.

"10. The method of making an edible frozen milk product which consists in combining with milk a substantial portion of a soluble edible casein, adding to said product a sodium citrate for increasing the whipping properties thereof, freezing the product without agitation until crystals begin to form therein, whipping the product without freezing to incorporate air therein and thereafter freezing the product without whipping until it is completely frozen.

"11. A powdered product adapted to be added to fresh milk and cream for the production of frozen milk products such as ice cream in the home refrigerator, said product comprising a milk powder containing a water soluble edible casein in combination with a salt of an alkali base with a weak acid and being substantially deficient in lactose.

"12. The method of making a milk product capable of being whipped while exposed to air at normal room temperatures when chilled to the point where it begins to freeze, and capable of retaining air so incorporated while being frozen without agitation, said method comprising the preparation of concentrated milk solids comprising water soluble edible casein and other milk solids which solids have been heated in the presence of a salt of an alkali base with a weak acid, mixing the concentrated solids with sugar and a small amount of stabilizer and dissolving the resultant product in fresh milk and heating the mixture to approximately 140° F."

The nature of the alleged invention is described so accurately and with sufficient brevity in the board's decision as to warrant the description being copied here:

"The subject matter of the appealed claims relates to a composition and a method of making frozen milk products in the ice trays of the conventional electrical refrigerator. In making up appellant's composition he takes milk and precipitates the casein by the usual acid method. This is then thoroughly washed and dissolved in an alkali to produce alkali caseinate. By these steps the lactose and inorganic milk salts are removed. It is well known that the addition of soluble salts to an aqueous bath lowers the freezing point of said material. By the removal of the lactose and salts the freezing point is raised and this is important for the reason that the temperatures prevailing in the freezing crypt of the average refrigerator is much higher than the temperatures used in making commercial ice cream.

"A second portion of milk is treated with a soluble salt of an alkali base with a weak acid such as sodium citrate and this is then heated to about 145° F. The addition of this salt tends to materially increase the viscosity so as to make the material stand up better after it has been whipped. The two portions of milk mentioned plus sugar and flavoring material are added to fresh milk or cream to make up a mix to be placed in the freezing trays. In use, the mix is placed in the freezing compartment and when crystals begin to form the product is then whipped to incorporate air and then the product is permitted to freeze solid without further whipping."

It will be observed that claims 2, 7, 8, and 11 are directed to a product while claims 10 and 12 are devoted to a method of making the frozen dessert.

The Zoller and Cosler patents teach the use of an alkali caseinate in making commercial ice cream. Cosler heats his product to obtain a thickening effect. Zoller also teaches the use of an alkali caseinate and removes the lactose and milk salts. Zoller recognizes that his process reduces the freezing time required and that no long waiting or aging period is necessary. Reduction of freezing time required is one of the functions of appellant's process and no aging of the mix is shown to be needed by his process.

Turnbow teaches the use of a milk thickened by using sodium citrate and heat. The purpose of thickening is to increase the viscosity of the milk so that it will retain a large percentage of the air whipped into it. Appellant claims that in his process he has this desired characteristic. Turnbow shows the use of 6.17 per centum sodium citrate. Appellant prefers the use of approximately 6 per centum of the same. The temperatures of Turnbow are slightly higher than those of appellant's 140° F. Appellant's application, however, does not disclose the 140° F. as being critical.

Turnbow shows that he may dry his product and later incorporate it into an ice cream mix with a heating of 145° F. for 30 minutes. Appellant states that he may dry his product and incorporate it into an ice cream mix and heat the same to a temperature of 140° F. for 30 minutes.

The Maxwell patent, so far as is pertinent here, discloses a device for stirring frozen ice cream in an ordinary household electric refrigerator, which device consists of a stirrer which stirs the ice cream while it is freezing. Appellant teaches and claim 10 calls for "freezing the product without agitation until crystals begin to form therein" and then "whipping the product without freezing to incorporate air therein." In other words, appellant takes his product out of the freezing pan, whips it and puts it back in the pan and freezes it without further whipping.

The examiner rejected all the claims except claim 10 as unpatentable over Zoller or Cosler in view of Turnbow. While some of the prior art cited to show the use of an alkali caseinate and a sodium citrate related to freezings in commercial ice cream making, it was the view of the examiner that it would not involve invention to apply those teachings to the making of homemade ice cream. He was of the view that each of these ingredients performed its expected and known function as taught by the prior art and that, in view of the teachings of Turnbow the heating and temperature to which it was subjected or the particular amount of sodium citrate added did not involve invention.

As to claim 10, having the limitation above referred to, it was the view of the examiner that the claim was not patentable over Cosler, Zoller and Turnbow in view of Maxwell. Maxwell is cited for the purpose of showing that it was old in the art to whip a partially frozen ice cream and return it to the freezing chamber. As before stated, Maxwell used an agitator and agitated the ice cream while it was freezing, but he states on the first page of his patent, lines 15 to 22: "Although there are numerous factors militating against proper stirring agitation of such homemade congealed delicacies during the freezing operation, the principal deterrent seems to be the difficulty and general unpleasantness of *removing the freezing pan from the refrigerator in order to stir the contents.* * * *" (Italics ours.)

So, it is observed that Maxwell discloses that it was old to remove the freezing pan from the refrigerator in order to stir its contents.

The Board of Appeals stated:

"Appellant concedes that the use of alkali caseinate in the making of commercial ice cream is shown to be old in each of the patents to Zoller and Cosler and that the addition of a soluble salt of an alkali base with a weak acid is also disclosed in the Turnbow patent. In the Turnbow patent the addition of this material is obviously for the purpose of increasing the viscosity of the mix so as to facilitate the whipping of air therein. The examiner holds that no invention was involved in combining these two substances in an ice cream mix. It is obvious that there is no new result obtained by combining the two substances. Each adds its own features to the mix regardless of the presence or absence of the other. While it is true that the three patents mentioned relate to the making of commercial ice cream, still this does not appear to be a matter of importance since one would naturally try to simulate, as far as possible, commercial practice in the making of ice cream in the household refrigerator.

"We are unable to see any invention in the method disclosed in the last three claims. Briefly stated, this method consists of placing a mix containing the special ingredients referred to in an ice cube tray, then chilling until crystals begin to form, then whipping and then finally finishing the freezing without further whipping. While the patent to Maxwell does not show a very close approximation of appellant's process, still it does disclose the idea of whipping the mix while it is freezing for the purpose of incorporating air therein."

While the language "We are unable to see any invention in the method disclosed in the last three claims" is somewhat inaccurate

in that claim 11 is a product claim, that claim nevertheless suggests the process for which appellant seeks a patent.

■■ We are in agreement with the decision of the Board of Appeals. We have carefully considered the various arguments made by appellant and especially the one in which he cites the case of Seabury v. Am Ende, 152 U.S. 561, 14 S.Ct. 683, 38 L.Ed. 553. This argument is that "The law is so well settled that one who makes a new combination and thereby obtains also a new result is entitled to a patent." It seems to be conceded that in the case at bar the appellant has a new combination and he contends that he has new results, useful in character, but the law is so well settled that these considerations alone do not entitle one to a patent that discussion of the subject here seems superfluous.

The new combination and the useful results must flow from an inventive conception. It is the view of the board and of this court that appellant has done nothing more than that which would be obvious to one skilled in the art. Each of appellant's steps in his process, or limitation in his product claims, is disclosed somewhere in the references cited, all of which relates to the art of making ice cream. In appellant's combination there is no coaction between the elements that produces unexpected results, but the function of the ingredients added or the steps taken is the same in appellant's combination as it was in the prior art, which suggests that it did not require invention to go into the prior art and study the useful steps which other inventors had taken and put them together as appellant has done.

The appeal as to claims 3 and 4 is dismissed. As to the remaining claims, 2, 7, 8, 10, 11 and 12, the decision of the Board of Appeals is affirmed.

Affirmed.