## H. TIBBE & SONS MANUF'G CO *v.* LAMPARTER.

*(Circuit Court E. D. Missouri, E. D.   September 5, 1892.)*

1. PATENTS FOR INVENTIONS—INVENTION—INTERPRETATION—CORNCOB PIPES.

Letters patent No. 205,816, issued July 9, 1878, to Henry Tibbe, claiming " a smoking pipe made of corncob, in which the interstices are filled with a plastic, self-hardening cement," must be interpreted as for corncob pipe in which the exterior interstices of the cob are filled with a self-hardening cement; and though the invention is not of a high order, yet, in view of the generally recognized merit of the article, the patent is valid. *Manufacturing Co.* v. *Heineken*, 43 Fed. Rep. 75, followed.

2. SAME—ANTICIPATION.

The fact that prior to the application the bowls of corncob pipes had been varnished with shellac, unmixed with other substances, does not constitute anticipation.

3. SAME.

Nor is it sufficient to show anticipation that plaster of Paris had been used to fill small cavities or cracks occasionally found in the cob.

4. SAME—INFRINGEMENT.

The patent is not limited to the use of plaster of Paris for the filling material, and it is an infringement to use either a mixture of finely pulverized corncob mixed with cornstarch, and moistened in the act of putting on by saturating the cob in alcohol, or a mixture of pulverized corncob and shellac.

In Equity. Bill by the H. Tibbe & Sons Manufacturing Company against Henry Lamparter for infringement of letters patent No. 205,816, issued July 9, 1878, to Henry Tibbe, for an improvement in corncob pipes. Decree for complainant.

*Paul Bakewell* and *R. A. Bakewell,* for complainant.

*J. Hugo Grimm,* for defendant.

THAYER, District Judge. The patent involved in this suit was considered and sustained in the case of *Manufacturing Co.* v. *Heineken,* 43 Fed. Rep. 75. It was there held that the claim of the patent should be interpreted as one for a corncob pipe in which the exterior interstices of the cob are filled with a plastic, self-hardening cement; that the making of such a pipe did not involve invention of a very high order. Nevertheless, as the result had been to convert a poor article into a good one, and to supply something to the trade which was new, and the merits of which were generally recognized, there was enough of invention to sustain the patent. The views thus expressed in the *Heineken Case* commend themselves to this court, and they are accordingly adopted.

With reference to the plea that the patent is void because the patentee was not the original and first inventor of such a corncob pipe as is described and claimed in the letters patent, it will suffice to say that the evidence before the court is not adequate to maintain that defense. There is considerable testimony in the record tending to show that, many years prior to the application for the patent in suit, corncob pipes had been made, the bowls of which were varnished on the outside with shellac, to protect them from dirt, and to give them a more finished appearance. But, even conceding that to be the fact, it does not show that Tibbe's invention was anticipated. His invention, as before stated, consisted in filling the exterior interstices of the corncob bowl of the pipe with a plastic, self-hardening mass or cement, to make it more durable. A coat of shellac, unmixed with other substances, and laid on with a brush in the manner described by the defendant's witnesses, cannot be regarded as the equivalent of the process described in the plaintiff's letters patent, and did not anticipate that process in any such sense as to render the patent void. The practice of varnishing or painting articles is so common that a patent could not be sustained which merely covered, or was so worded as to broadly cover, the application of a coat of varnish to an article of manufacture. Complainant's patent will not be so construed, therefore, as to cover the application of a coat of varnish or paint to the bowl of a corncob pipe; and, on the other hand, the fact that corncob pipes had occasionally been varnished with shellac before the date of complainant's invention, to make them more presentable, and to protect them from dirt, will not be regarded as anticipating the invention.

The testimony found in the record, to the effect that in a few instances plaster of Paris had been used, before the date of the patent, to fill such small cavities or cracks as were occasionally found in the cob, is also insufficient to establish the plea of anticipation. No samples of pipes in the manufacture of which plaster of Paris had thus been used were produced, and it is not pretended that plaster was so applied to the whole exterior surface of the bowl, with a view of improving the quality of pipes. It appears to have been applied, if at all, solely with a view of remedying defects that were sometimes found in the cob. *The Barbed Wire Patent,* (*Washburn & Moen Manuf'g Co.* v. *Beat 'Em All Barbed Wire Co.*,) 143 U. S. 275, 12 Sup. Ct. Rep. 443; *Haughey* v. *Meyer,* 48 Fed. Rep. 679.

The question of most importance is whether defendant has infringed. It is admitted by the answer that on some occasions prior to the commencement of this suit the defendant made corncob pipes, and in so doing filled the exterior interstices of the cob, after it was turned and bored, with a mixture of finely pulverized corncob and cornstarch. His contention is that the mixture in question was pressed into the interstices in a perfectly dry state by hand, while the cob was rapidly revolving on a spindle, and that the bowl was subsequently coated with shellac, to hold the dry mixture in place; but it is conceded that before the mixture of cob dust and starch was thus applied the cob was in

every instance saturated with alcohol. The court has reached the conclusion, in view of all the testimony, that when the mixture of cob dust and cornstarch was used as a filler, it was moistened sufficiently, either before it was applied, or in the act of applying it, to form a thick, pasty substance, which adhered to the cob, filled the interstices, and subsequently hardened. The court further concludes from the testimony that on some occasions defendant also used as an external filler a mixture of finely pulverized corncob and shellac, which likewise had the property of adhering firmly to the cob, hardening, and effectually closing the pores of the cob.

The court is forced to regard both of the processes of manufacture last described as an infringement of complainant's patent. While the complainant has always used plaster of Paris as a filler, yet it is not limited to the use of that particular substance. The patentee conceived that by filling the small pores of the cob from the outside with some mixture that would harden, and resist the action of heat, the bowl of a corncob pipe would be rendered more durable, without losing its capacity to absorb nicotine. The idea was a good one, though not involving a high order of invention, and it appears to have led to the manufacture of a cheap corncob pipe, superior to any that had before been made, which immediately came into great demand. That the patentee did not intend to limit himself to a filler consisting of plaster of Paris is obvious from the wording of the specification and claim. Speaking of the bowl or head of the pipe, he says: "These are made of corncob, in which the interstices are filled with plaster of Paris, or other suitable plastic mass or cement;" and the claim is for "a new article of manufacture, a smoking pipe made of corncob, in which the interstices are filled with a plastic, self-hardening cement, substantially as and for the purposes set forth."

The court is accordingly of the opinion that the claim of the patent is infringed when any plastic mixture such as ground corncob and starch, or ground corncob and shellac, which will set or harden, is applied as a filler to the exterior surface of the bowl of a corncob pipe, and that it makes no difference whether the plastic, self-hardening mass is moistened and mixed before it is applied to the bowl, or whether it is so moistened and mixed in the act of applying it. The view taken by the court leaves the defendant at full liberty to varnish or paint the bowls of corncob pipes according to the old method. It also leaves the defendant at full liberty to press dry corncob dust into the exterior interstices of the cob, and to apply a coating of varnish to hold the dry dust in place, provided there is no such admixture of the two substances in the process of manufacture as to form a plastic, self-hardening mass.

A decree and an injunction will be ordered, in accordance with the foregoing views.