## A. B. DICK CO. v. BELKE & WAGNER CO.

(Circuit Court, N. D. Illinois. July 3, 1897.)

1. PATENTS—INVENTIONS—IMPROVEMENTS IN INKS.

The Fuerth patent, No. 437,588, which, by the use of linseed oil, vaseline, and the essential coloring matter, produces an ink rendered limpid by friction, and avoiding the tendency to adhesiveness characteristic of ordinary printer's ink, and adapting it to the needs of stencil printing, discloses a new discovery, and a valuable advance in the art of printing.

2. SAME—INFRINGEMENT.

Where the analysis of an alleged infringing ink shows the presence of the constituents entering into the patented combination, and the defendants fail to deny on oath the use of such constituents, the analysis will be taken as correct, and as proof of infringement.

This was a suit in equity by the A. B. Dick Company against the Belke & Wagner Company for the alleged infringement of a patent for an improvement in inks.

Dyer & Driscoll and Poole & Brown, for complainant.
C. C. Bulkley and N. H. Hanchett, for defendant.

GROSSCUP, District Judge. The bill is to restrain infringement of letters patent No. 437,588, granted to the Redding Ink & Duplicator Company, as assignee of William C. Fuerth, September 30th, for improvement in inks. The defendant denies infringement, and also contests the validity of the patent.

The purpose of the patentee was to produce an ink adaptable to the needs of stencil printing. Such an ink must necessarily be different, in some respects, from the ordinary printer's ink, and especially in view of the new stencil sheet, which is composed of more delicately constructed paper. Mr. Fuerth points this out in the following language:

"Printer's ink, properly speaking, is a viscid and very tacky mass, and, when applied, for printing purposes, for a printing roller over a stencil sheet composed of delicately waxed paper, it would naturally tend to tear it, and the ink in a pure state was of no utility. Consequently, in the old state of the art, it was necessary to the production of even a few impressions to thin the printing ink with an excess of linseed oil, castor oil, turpentine, and the like."

And Professor Morton concurs with this in substantially the same language. The introduction of these solvents, however, was calculated to make the ink too fluid to be available for use in the usual manner of stencil printing. The patent in question produces an ink which, appearing to the printer in a state of jelly-like consistency, is rendered limpid by friction, and avoids the tendency to adhesiveness

characteristic of ordinary printer's ink. In these respects it seems to be a genuine and valuable advance in the art.

Printer's ink for a long time has been made from the products of petroleum, linseed oil, fatty oils, vegetable oils, and other products, according to different formulas. The patent in suit employs linseed oil, together with vaseline, a product of petroleum, with the essential coloring matter, and is not, in this respect, generally speaking, very different from the old printer's ink. But, while vaseline is a product of petroleum, it is likewise, in many of its characteristics, different from the other products of petroleum, and, when combined with linseed oil and the other coloring matter, as pointed out in the patent in suit, presents an ink, as a finished entirety, very different from the old printer's ink, and different in just those respects that make the one adaptable to stencil printing and the other unadaptable. This constitutes a new discovery in the art of printing, just as much as if its elements, or a portion of them, were derived from some substance hitherto unrelated to printing ink. In my opinion the patent is valid.

The analysis of defendants' ink by the complainant's experts shows the presence of vaseline and the other constituents entering into the complainant's combination. This testimony might be much less conclusive if the defendants, who are alive and filed their answer, had denied under oath the use of such constituents. Their failure to meet complainant's analysis by a denial leaves me in no doubt that the analysis is substantially correct. The usual decree for an injunction and accounting may be entered.