KUPPER et al. v. WESTINGHOUSE ELECTRIC & MFG. CO.

(District Court, W. D. Pennsylvania. March 31, 1914.)

No. 11.

1. PATENTS (§ 116*)—VALIDITY—DESCRIPTION.

The Bormann patent No. 736,812, for solder, described the same as consisting "of an intimate mixture of finely powdered soft-solder (tin, alloy, or the like) triturated to a paste, a deoxidizing agent (e. g., zinc chloride, ammonium chloride, or both together) and a thickening body (such, for example, as cellulose) which burns easily and leaves no trace behind it." Held, that the use of the word "to" in the phrase "triturated to a paste," instead of "for," did not render the description insufficient.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 168½; Dec. Dig. § 116.*]

2. PATENTS (§ 328*)—VALIDITY—INFRINGEMENT.

The Bormann patent No. 736,812, claim 1, for a liquid soft-soldering mass, held to involve a patentable invention, not anticipated, valid, and infringed.

In Equity. Suit by Rudolph Kupper and others against the Westinghouse Electric & Manufacturing Company for patent infringement. Decree for complainants.

H. A. Seymour, of Washington, D. C., and W. G. Doolittle, of Pittsburgh, Pa., for complainants.

Wesley G. Carr, of Pittsburgh, Pa., for defendant.

ORR, District Judge. The plaintiffs possess all the rights under United States patent No. 736,812, issued to Rudolph Bormann, of Berlin, Germany, under date of August 18, 1903, for solder. They have complained that the defendant has infringed their rights, and seek the customary relief. The defendant denies the validity of said patent for want of novelty and invention. It also denies the sufficiency of the disclosure of the patent, but does not aver in its answer that the failure of Bormann to make sufficient disclosures was due to an intention to deceive the public.

[1] Before describing the compound, Bormann in his specifications makes reference to the method hitherto used for uniting metals by soft-solder, and shows the disadvantages of such method. He then describes his compound, shows the method of using it, and states the advantages of such method over the method formerly in use. The former method included:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"First cleansing the portions to be united (for example, two metal bodies) by means of a known deoxidizing agent (e. g., zinc chloride or the like) and then heating the same with a soldering-iron, applying the solder to the seam, and melting the same."

The disadvantages of that method were waste of solder by reason of difficulties in evenly distributing the same, and inability to use the soldering-iron in the manipulation of small objects. His description of the compound in the specifications is as follows:

"The soldering agent forming the subject of the present invention consists of an intimate mixture of finely-powdered soft-solder (tin, alloy, or the like) triturated to a paste, a deoxidizing agent (e. g., zinc chloride, ammonium chloride, or both together) and a thickening body (such, for example, as cellulose) which burns easily and leaves no trace behind it."

Discarding for the present the examples given in the above, it is to be observed that the "deoxidizing agent" must be in liquid form. It is that which "cleansed" the metals before heating under the old method. It is that which gives the liquid or pasty characteristic to the mixture because solder could not do so; neither is it to be understood that the "thickening body" should do so. Again it is well known that the chlorides given as examples are extremely soluble in water, and can be procured commercially in such form. As to the "thickening body," it is observed that the only quality demanded is that it shall burn easily and leave no trace behind. The phrase "triturated to a paste," when considered as descriptive of the "finely-powdered soft-solder," has given the experts some trouble. When we consider that powder has been defined to be "any substance made fine and dry as rough as sand or as fine as flour" (Stormouth's Dictionary), and that "trituration" is the rubbing or grinding to a fine powder, we must find the degree of fineness to be indicated by the word "paste." Had the phrase read "triturated *for* a paste," there could be no question as to clearness of expression. That the word "to" and not the word "for" is used should not be held to obscure the intention of the inventor, who appears by the patent to have been a German in whose language "zu" stands for either of the foregoing words. His description is sufficient for men skilled in the art of using soft-solder, such as tinsmiths. They know how finely powdered a substance should be to form a paste, they know the nature of paste, and how to thicken it. Exactness in measurements is not necessary. Following his description the patentee says:

"This complies with the necessary requirements, since a soldering material is thus obtained which can be spread on in a form hitherto unknown as a pasty fluid, and has this striking advantage that it can be applied to the object to be soldered by means of a brush, so that there is a guaranty that the soldering material will be applied in the necessary quantity and will be very evenly distributed over the parts to be soldered. By this means these parts may be securely and intimately connected by simply heating them over a spirit or similar lamp. A further striking advantage of employing such a pasty fluid soft-solder material is that in a space of time incomparably shorter than what was hitherto possible quite a number of objects—particularly small objects—can be simultaneously soldered. One proceeds by first applying the soldering material with a brush to the articles to be soldered and then heating them one after another over a spirit-flame, or the like. Also if on one article there are several places to be soldered these places can first be provided with a coating of the material, and consequently heated

without the solder falling from the seam on the turning and manipulation of the article in flame of the lamp. This is prevented by exactly the necessary quantity of the soldering material being applied."

[2] Claim 1 of the patent, which is alleged to be infringed, is as follows:

"1. A liquid soft-soldering mass consisting of a mixture of a finely pulverized soft-solder metal, triturated to a paste and a deoxidizing agent, together with a thickening substance, which burns without leaving any trace behind it, substantially as specified."

In view of what has heretofore been stated, it is not necessary to analyze the claim further than to note the three elements to be intimately mixed, the powdered alloy, the flux, and the vehicle. The court is satisfied that the patent discloses a "new and useful composition of matter," and that the manner of making it is sufficiently disclosed in the specifications. So far as appears from the evidence the invention was not anticipated. British patent 2410 of 1862 to Johnson is for "Improvements in coating or covering metallic surfaces with copper." It relates to the coating of iron "by means of magneto-electric or electro-galvanic processes," and consists in the employment of certain compositions of which none is a solder, although erroneously called such in the patent. United States patent No. 86,414 to Kent is for a flux only, while United States patent No. 87,391 to Blinn, in the light of the patent in suit, seems to be suggestive of the Bormann product, yet a careful reading of it compels the court to hold that it is not a disclosure of the subject of the Bormann patent. In the first solder not finely powdered, but coarsely granulated, is first given an oily covering to prevent oxidation, then mixed with a described tinning flux, and then further mixed with pulverized or granulated solder and then thoroughly dried. United States patent No. 351,546, issued to Charles W. Walther, does not relate to soft-solder at all. It describes a mixture for brazing which can only be used at a high temperature. United States patent No. 496,116, issued to William Lloyd Gale, for a compound for welding cast iron, has no reference to soft-solder. United States patent No. 592,914, issued to Knox is for a flux paste which does not contain any solder. This is true also with respect to United States patent 608,978, issued to Burnley, and United States patent No. 728,079 to Brocius and Eshelman.

The Bormann patent in suit is the first patent to disclose a pasty soft-solder comprising powdered alloy, a vehicle and a flux. It is valid.

Infringement must also be found. The plaintiffs for some years prior to 1912 had been selling its product to the public under the name of "Tinol." Early in that year defendant bought from plaintiff some pounds of "Tinol," and later defendant advertised and sold its product to the public under the name of "Weldwell," and has continued to do so notwithstanding early notice of infringement and subsequent complaint in court. "Tinol" and "Weldwell" appear to be like each other. It is strongly insisted by defendant that they are not alike. Three analyses of defendant's product used at different times are in evidence. In each, however, there is the intimate mixture of soft-

solder, the flux, and the vehicle. In one the flux is ammonium chloride, the vehicle is vaseline and glycerin. In another the flux is zinc chloride and ammonium chloride, the vehicle vaseline, transformed oil and fusel oil. In the third, the flux is zinc chloride, dissolved in denatured alcohol and also ammonium chloride, the vehicle vaseline. Such variations do not give defendant any right to sell their products, if the substitutions are equivalents for any of the parts of the plaintiff's mixture. If the flux is used in the form of a salt instead of a solution, it necessarily follows that there should be some change in the vehicle. Whether two substances are added to the mixture to make the vehicle is immaterial. The mixtures of the defendant are composed of the same parts as specified in the patent or their equivalents.

It is further urged that plaintiffs' mixture is made in accordance with United States patent to Leisel, No. 804,664, which was issued some two years after the patent in suit. It is unnecessary to determine the scope of the Leisel patent, as it can have no bearing upon the present issue. The product of the plaintiffs is that which is described in the patent in suit. The product of the defendant is also that of the patent. The latter entered the field with full knowledge of the rights of the plaintiffs. Therefore they should be enjoined.

Let a decree be drawn.