### COPLEY PLAZA OPERATING CO. v. SCHAUM & UHLINGER, Inc.

(Circuit Court of Appeals, First Circuit. November 29, 1920.)

No. 1459.

Patents ☞328—For process for polishing silverware valid and infringed.
  The Uebersax patent, No. 1,063,478, for a process for polishing silver utensils by subjecting them to rotation, while suspended in an approximately central position within a polishing mass, *held* valid and infringed.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit in equity by Schaum & Uhlinger, Incorporated, against Copley Plaza Operating Company. Decree for complainant and defendant appeals. Affirmed.

For opinion below, see 260 Fed. 197.

Oliver Mitchell, of Boston, Mass. (Edwin F. Thayer, of Attleboro, Mass., and Joseph T. Brennan, of Boston, Mass., on the brief), for appellant.

Alfred W. Kiddle and Henry T. Hornidge, both of New York City (Wylie C. Margeson, of New York City, and Van Everen, Fish & Hildreth, of Boston, Mass., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and ALDRICH, District Judge.

JOHNSON, Circuit Judge. This is an appeal in a patent infringement case. The appellee is the owner of patent No. 1,063,478, issued on June 3, 1913, to Jean Uebersax, of Switzerland, for a "process for polishing silver utensils."

The defenses were invalidity and noninfringement, and upon both the District Court found in favor of the appellee.

The process of the patent may be briefly described as one for polishing silver utensils by subjecting them to rotation while suspended in an approximately central position within a polishing mass, and is thus described by the inventor in his application:

"This invention relates to a process for polishing silver utensils; that is to say, for rendering silver plates and other silver utensils for table and culinary purposes brilliant by polishing. This process consists in placing those silver utensils to be polished which are very liable to get out of shape, such, for example, as teapots, plates, coffeepots, sauceboats, etc., with an aqueous soap solution of 2 to 4 per thousand, for example and with small steel balls and small steel pins. in a rotary drum, and in causing the drum, thus charged and closed as hermetically as possible, to revolve for a certain time in order that, under the combined action of the steel balls and pins and the soapy water upon the silver utensils the latter may become polished, the steel balls and pins being employed in such quantities that they always completely cover the silver utensils during the rotation of the drum, for the purpose of avoiding almost the radial displacement of the said articles, and consequently of preventing them from getting out of shape. Consequently the position of each utensil to be polished relatively to the longitudinal axis of the drum is not changed during the rotation of this latter; the steel balls and pins effecting only a restrained and slow displacement along the surfaces of the utensils to be polished."

He then describes the apparatus by which the process may be carried out, which consists of a rotary drum formed of two parts of equal length removably fitting one upon the other, which by means of an electric motor is made to revolve within a trough designed to receive the contents of the drum after an operation. The necessity of selecting articles to be polished by the process whose specific gravity is greater than that of the polishing mass, and of regulating the speed of the rotation of the drum in accordance with the shape of the articles so that they may be kept from striking the sides of the drum and thereby deformed, is pointed out as follows:

"During the rotation of the drum the silver utensils, which are liable easily to get out of shape, will remain always fully enveloped by the steel balls and pins, and, as these balls and pins are much more mobile than the said utensils, the latter will never become much displaced in the radial direction within the drum during the rotation of the latter, and will consequently not be subjected to deformation.

"The utensils have such relation to the polishing mass in specific gravity as to be kept approximately central of the drum in its rotation, and will neither fall to the bottom nor rise to the top in the rotation of the drum, and hence are kept from contact with the walls of the drum, and prevented from being deformed in any way. The speed of rotation varies according to the character of the article; that is, a perfectly round article would still remain central, whether the speed be high or low, but an article having projections, such as a water pitcher or the like, would be dislodged from an absolutely central position, due to the irregular action upon the projecting parts; and hence the rotation is adjusted to a comparatively low speed."

He then makes the following claim:

"The method herein described of polishing articles consisting in subjecting the articles to rotation while suspended within a polishing mass, the relative specific gravity of the articles and polishing mass being such as to maintain the articles approximately central of the polishing medium during rotation, substantially as described."

The prior art disclosed that rotary drums or tumbling barrels had long been in use for polishing small articles, chiefly of cheap jewelry; but the method of operation in these cases had been, as pointed out in the opinion of the learned judge who sat in the District Court, "a method of mass polishing by using tumbling barrels or revolving or oscillating drums."

In his opinion, which appears in 260 Fed. 197, he has considered the prior art in such detail that a discussion here is unnecessary, and we think his description of the earlier processes as a "churning process" very aptly describes them. In none of the prior uses were the articles to be polished suspended within the polishing mass, so that they would be maintained "approximately central of it during rotation," and in all of them the speed of rotation of the drum was so rapid that it would have been impossible to hold the articles to be polished so suspended; but in the rotation of the barrel they passed in and out of the polishing mass, coming in contact with each other and the sides of the drum or tumbling barrel, as well as in contact with the steel balls or other polishing material.

Uebersax points out three elements upon which the successful performance of his process depends and which are not made necessary to the performance of any process disclosed by the prior art:

(1) The specific gravity of the article to be polished must be greater than that of the polishing mass.

(2) Regulation of the speed of rotation of the drum must be made in accordance with the shape of the article to be polished, so that it may remain approximately central of the polishing mass.

(3) The polishing mass must substantially cover the article to be polished during rotation.

We are satisfied with the conclusion reached by the District Court, that the method of the patent in suit was not anticipated by any prior use that was shown, or prior knowledge contained in publications relating to burnishing by old processes, and that the amendments which were allowed by the Patent Office were within the scope of the original specifications, and that, upon the authority of Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 Sup. Ct. 652, 53 L. Ed. 1034, and Minerals Separation Co. v. Hyde, 242 U. S. 261, 37 Sup. Ct. 82, 61 L. Ed. 286, the patent is valid.

The appellant clearly employs the method of the patent in suit for polishing silver utensils. For this purpose it uses one of the old tumbling barrels manufactured by the Smith-Richardson Company, which has manufactured barrels of that type since 1906. The record discloses that the Smith-Richardson Company, at the suggestion of a salesman formerly in the employ of the company which owned the appellee's patent, made necessary changes in the tumbling barrel which they had manufactured, so that it could be used to perform the work of polishing silver utensils according to the method of the patent in suit, and that it had made arrangements with this salesman for placing its modified tumbling barrel in hotels and restaurants as a competitor of the appellee's patent.

While the Smith-Richardson barrel, as modified, performs the process of the patent in suit, it was not originally designed to perform such process, nor was it, without modification, adapted to such use, nor could it, without change, have been actually used to perform the work, and its use, in its changed condition, was a substantially different one.

The appellant alleges as error that the District Court "erred in making a formal finding of facts not relating to any issue raised by the pleadings."

The finding of which the appellant complains is:

"That Young became familiar with its process while with the Tahara Company, and later undertook to exploit it for the benefit of his new employer and himself as exclusive agent in the hotel and restaurant trade."

This finding was only incidental to the main finding that the appellant was infringing the patent of the appellee, and pointed out that the copying of the appellee's method was successful, because of the fact that Young, as a salesman, had become familiar with the process of the Uebersax patent, and knew what changes it was necessary to make in the old tumbling barrel manufactured by the Smith-Richardson Company to enable it to do the work of polishing silverware according to the method of the Uebersax patent.

After a careful study of the voluminous record in the case and the briefs of counsel, we think the District Court in its reasoning and conclusions was right, and it seems unnecessary to go more fully into the case than we have in this opinion.

The decree of the District Court is affirmed, with costs to the appellee.